Meriel L. Darzen, Oregon State Bar (OSB) No. 113645
Email:  meriel@crag.org
Ralph Bloemers, OSB No. 984172
Email:  ralph@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone:  (503) 525-2725  Fax:  (503) 296-5454
LEAD COUNSEL – *Pro Hac Vice*

*Attorneys for Plaintiffs Earth Island Institute, Greenpeace USA, and Sequoia Forestkeeper*

Daniel Galpern, OSB No. 061950
Law Offices of Daniel M. Galpern
2495 Hilyard St., Suite A
Eugene, Oregon 97405
Phone:  (541) 968-7164  Fax:  (971)244-9035
Email: dan.galpern@gmail.com
*Pro HacVice*

*Attorney for Plaintiff James Hansen*

René P. Voss, California State Bar No. 255758
Natural Resources Law
15 Alderney Road
San Anselmo, CA  94960
Phone:  (415) 446-9027  Fax:  (267) 316-3414
Email:  renepvoss@gmail.com
LOCAL COUNSEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, et al. | No.:  3:19-cv-05792-LB |
| Plaintiffs, | **COMBINED RESPONSE-REPLY IN OPPOSITION TO MOTION TO DISMISS/CHANGE VENUE AND IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO AND PRELIMINARY INJUNCTION** |
| v. | |
| KIMBERLY NASH, et al.**,** | |
| Defendants | Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. |
| | Date & Time: To be set by Court Judge:  Hon. Richard Seeborg |

No.:  3:19-cv-05792-LB – COMBINED RESPONSE-REPLY
IN OPPOSITION TO MOTION TO DISMISS/CHANGE VENUE
AND IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................3

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS/TRANSFER (Dkt#15) ....................5

I.   Venue is proper in the Northern District under 28 U.S.C. 28 U.S.C. § 1391(e)(1). ...........................................................................................5

   A.   The crux of the complaint centers on actions occurring in the Northern District ..................................................................................5

   B.   Real property is not at issue in this case. ............................................6

      1.   Discretionary Transfer to the Eastern District is Not Warranted and is Not in the Interest of Justice ................................................7

REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION .............................................................9

I.   Introduction .......................................................................................9

II.   Additional Facts/Background ...............................................................10

   A.   Plaintiff John Muir Project diligently pursued resolution in good faith. ...........10

   B.   Plaintiffs continued monitoring efforts show that live trees are being cut down in the project area contrary to defendants' representations ....................11

III.   Argument ........................................................................................12

   A.   Plaintiffs are Likely to Succeed on the Merits ......................................12

      1.   Plaintiffs have standing to challenge HUD's actions pursuant to the Disaster Relief Act. ...................................................................12

      2.   Defendants have not established that the FHWP logging project is an eligible activity under 42 U.S.C. § 5305(a)(2). ..............................12

      3.   The biomass power plant and the FWHP logging project are connected and interdependent actions for the purposes of NEPA and HUD environmental review. ..........................................................13

      4.   Plaintiffs have demonstrated that there are significant changed circumstances in the project area and that the project treatments are not the same as analyzed in the EISs. .......................................15

   B.   Plaintiffs Have Demonstrated Irreparable Harm. .................................16

      1.   Post-Fire Logging Harms Soils and Hinders Forest Recovery. ............17

      2.   Post-Fire Logging Increases Greenhouse Gas Emissions and Fire Risk. ....................................................................................17

      3.   Young Emerging Forests and Fire-Killed Trees Hold Significant Biological and Ecological Value. ...................................................17

C.      The Balance of the Harms Tips in Plaintiffs Favor. ...........................................20

CONCLUSION..........................................................................................................................21

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 2

Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Tel. 503-525-2725

# TABLE OF AUTHORITIES

## CASES

*Alliance for Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ........................................................... 15
*Animal Legal Def. Fund v. U.S. Dep't. of Agriculture,*
  No. CV 12-4407-SC, 2013 U.S. Dist. LEXIS 2935 (N.D. Cal. Jan. 8,2013) ............................ 5
*Blue Mountains Biodiversity Project v. Blackwood,*
  161 F.3d 1208 (9th Cir. 1998) .............................................. 12, 14
*Center for Biological Diversity v. U.S. Bureau of Land Management,*
  No. C 08-05646 JSW, 2009 U.S. Dist. LEXIS 34249 (N.D. Cal. Apr. 14, 2009) ..................... 4
*City of Hartford v. Glastonbury,*
  561 F.2d 1032 (2nd Cir. 1976) ........................................................... 11
*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388, 399 (1987) ................................................................ 10
*Commodity Futures Trading Comm'n v. Savage,*
  611 F.2d 270 (9th Cir. 1979) ............................................................. 6
*Ctr. for Environmental Law and Policy v. U.S. Bureau of Land Management,*
  No. C08-1730RAJ, 2009 U.S. Dist. LEXIS 139484 (W.D. Wash. May 12, 2009) ................... 5
*Earth Island Inst. v. Quinn,*
  56 F. Supp. 3d 1110 (N.D. Cal. July 21, 2014) ..................................................... 5
*Gerin v. Aegon USA, Inc.,*
  No. C 06-5407 SBA, 2007 U.S. Dist. LEXIS 28049 (N.D. Cal. Apr. 4, 2007) ......................... 6
*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501, 508 1947). ............................................................. 6, 7
*Jernigan v. Cal. Dep't. of Corr. & Rehab.,*
  No. C 09-5192 RS, 2011 U.S. Dist. LEXIS 9675 (N.D. Cal. Jan. 24, 2011) ....................... 6, 7
*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981) ................................................................. 6
*Se. Alaska Conservation Council v. U.S, Forest Serv.,*
  No. 1:19-cv-00006-SLG, 2019 U.S. Dist. LEXIS 161639 (D. Alaska Sept. 23, 2019) .......... 19
*Sierra Club v. United States,*
  23 F. Supp. 2d 1132 (N.D. Cal. 1998) ........................................................... 12
*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ................................................................. 6
*W. Watersheds Project v. Salazar,*
  No. 08-0516-E-BLW, 2009 U.S. Dist. LEXIS 39364 (D. Idaho May 7, 2009) ..................... 5

## STATUTES

28 U.S.C. § 1391 ........................................................................... 3, 4
28 U.S.C. § 1404 ........................................................................... 6
42 U.S.C. § 5305 ........................................................................... 10

## REGULATIONS

24 C.F.R § 570.202 ........................................................................... 11

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 3

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

24 C.F.R. § 570.201(c)........................................................................................................ 11
40 C.F.R. § 1508.25 ........................................................................................................... 12

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 4

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

Plaintiffs submit the following combined: 1) Response in Opposition to Defendants' Motion to Dismiss/Transfer; and 2) Reply in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS/TRANSFER (Dkt# 15)**

**I.      Venue is proper in the Northern District under 28 U.S.C. 28 U.S.C. § 1391(e)(1).**

Under 28 U.S.C. § 1391(e)(1), a civil action against an employee of the United States or any agency thereof acting in his official capacity, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in  the action." Section 1391 applies to this case because four of the defendants are officers or agencies of the United States government. Venue is proper in the Northern District because a substantial part of the events giving rise to the majority of plaintiffs' claims occurred in the Northern District, and because two of the four plaintiffs reside in the Northern District and no real property is involved in the action.

**A.      The crux of the complaint centers on actions occurring in the Northern District**

Venue is proper in any district where a substantial part of the events of omissions giving rise to the claim occurred. 28 U.S.C. § 1391(e)(1). Notably this statute does not require *all* of the events to have occurred in that district, only a substantial part.  Plaintiffs allege that a substantial part of the events or omissions giving rise to the claims occurred in the Northern District. Compl., ¶ 10 (Dkt #1). Specifically, plaintiffs allege that the San Francisco office of defendant HUD administers the grant that is the central focus of plaintiffs' first, second and fourth claims for relief. Compl., ¶¶ 10, 93–103; 104–16; 124–28. For example, plaintiffs' fourth claim centers

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 5

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

on HUD's actions to award the grant and then release the $28 million of disaster funding to California HCD. *Id.* at ¶ 128. The funding approval was signed by Kimberly Nash in her official capacity as Director of HUD's San Francisco Office of Community Planning and Development. *See* Declaration of Meriel Darzen (Darzen Decl.) (Dkt #28), Ex. 7. This action is a significant event that gave rise to plaintiffs' claims and it occurred in the Northern District. Similarly, HUD's decision to deny Plaintiff Earth Island's objection to the release of funds, and thereby determine that NEPA and HUD environmental regulations were adequately complied with, was signed by defendant Nash and originated at the San Francisco office. *See* Declaration of Dr. Chad Hanson (Hanson Decl.) (Dkt # 25), Ex. 7. This action was by no means "inconsequential" as defendants assert. Mot. to Transfer at 6. (Dkt. #15) Without these actions, plaintiffs' claims fail to arise at all. HUD holds the purse strings, and if HUD had granted the objection and denied the authorization for funding, plaintiffs would not have been harmed. Venue is proper in the Northern District.

**B.      Real property is not at issue in this case.**

As explained above, venue is proper in the Northern District pursuant to 28 U.S.C. § 1391(e)(1)(B). In the alternative, venue is proper because two of the four plaintiffs reside in the Northern District and no real property is involved in the case. 28 U.S.C. § 1391(e)(1)(C). Defendants' reference to *Center for Biological Diversity v. U.S. Bureau of Land Management*, No. C 08-05646 JSW, 2009 U.S. Dist. LEXIS 34249 (N.D. Cal. Apr. 14, 2009) is inapposite. Dkt. #15 at 7–8.  In *Center for Biological Diversity*, a case which involved federal oil and gas leases, venue was transferred because the court considered federal oil and gas leases to be "real estate," and rights of way, easements, as well as land exchanges and acquisitions were central to the litigation. *Ctr. for Biological Diversity*, 2009 U.S. Dist. LEXIS 34249, at *1, *3.  More recently, a court in this District had the opportunity to distinguish this case, finding that an action

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 6

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

pertaining to the interpretation and enforcement of federal environmental laws, like the case at hand, does not involve "real property" under 28 U.S.C. § 1391(e)(1). *Animal Legal Def. Fund v. U.S. Dep't. of Agriculture*, No. CV 12-4407-SC, 2013 U.S. Dist. LEXIS 2935, at *2–3 (N.D. Cal. Jan. 8, 2013) (distinguishing *Ctr. for Biological Diversity* because no real property is central to the action where the claims allege that federal environmental laws were violated and, thus, venue is proper where plaintiffs reside when there is a federal defendant); *see also W. Watersheds Project v. Salazar*, No. 08-0516-E-BLW, 2009 U.S. Dist. LEXIS 39364, at *6 (D. Idaho May 7, 2009) (noting that "the legislative history to [28 U.S.C. § 1391] shows that the real property limitation was added due to congressional concerns 'over the local nature of some real property actions,'" and finding "persuasive cases that have held that environmental actions such as this are not actions in which real property is involved"); *Ctr. for Environmental Law and Policy v. U.S. Bureau of Land Management*, No. C08-1730RAJ, 2009 U.S. Dist. LEXIS 139484, *9 (W.D. Wash. May 12, 2009) (because plaintiffs only seek to compel Federal-defendants to comply with NEPA, the action does not "involve" real property).

Here, plaintiffs' action does not involve real property as understood by 28 U.S.C. § 1391(e)(1)(C) but rather, this action involves the use of HUD funding for logging activities. Timber is considered to be personal property, not real property. *See Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1115–16 (N.D. Cal. July 21, 2014). The central issue in plaintiffs' case is whether, in deciding to allocate and utilize the federal disaster funds, defendants violated federal law. Under these facts, venue in the Northern District is appropriate.

       **1.**    **Discretionary Transfer to the Eastern District is Not Warranted and is Not in the Interest of Justice.**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 7

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

where it might have been brought . . . ." Once proper venue is established, the party moving for transfer of a case bears the burden of demonstrating that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Transfer under §1404(a) "should not be freely granted." *Jernigan v. Cal. Dep't. of Corr. & Rehab.*, No. C 09-5192 RS, 2011 U.S. Dist. LEXIS 9675, at *8 (N.D. Cal. Jan. 24, 2011) (citing *In re Nine Mile, Ltd.,* 692 F.2d 56, 61 (8th Cir. 1982). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient," *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964), and a "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.*  There is a strong presumption in favor of plaintiff's choice of forums. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

In making a transfer determination under §1404(a), court must weigh, "'public interest factors' affecting the convenience of the forum" when transferring a case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). These factors include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time [to] trial in each forum. *Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 U.S. Dist. LEXIS 28049 at *10 (N.D. Cal. Apr. 4, 2007) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)).

In making transfer determinations, a court must balance the deference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *See Gulf Oil*, 330 U.S. at 508. Here, the only factor that might weigh in defendants' favor is factor (3) with respect to one or two HCD witnesses.  However, as defendants admit, on the merits, this case involves the review of a record, and it is unlikely to require witnesses to appear in person.  Factor

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 8

Crag Law Center
*3141 E Burnside Street
Portland, Oregon 97214
Tel. 503-525-2725*

1   (1) weighs in favor of plaintiffs. The remaining factors are neutral, except that factor (8) weighs

2   in favor of plaintiffs as time is of the essence in ruling on the pending motion. Federal defendants

3   suggest that the interests of justice will be served by transferring the case because the Eastern

4   District previously adjudicated a separate case involving logging in the perimeter of the Rim

5   Fire.  This argument ignores the fact that three out of the four claims in this case arise from

6   different federal agency actions and different statutes.  This contention does not address the

7   factor of relative court congestion and speed of adjudication. *See Jernigan*, 2011 U.S. Dist.

8   LEXIS 9675, at *9–10. Thus, defendants have not carried their burden to demonstrate a need to

9   transfer the matter to the Eastern District.

## REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.    Introduction

Plaintiffs have demonstrated a likelihood of success on the merits of their four relatively

straightforward administrative claims which raise substantial issues concerning the use of federal

disaster relief funding for logging. Defendants present a fear-inducing narrative, and confuse the

temporary nature of this request with a permanent injunction. Fall has arrived in the Sierras, and

with it cooler, wetter weather.  At this time, the Park Service, the Forest Service, tribes, and other

agencies in Northern California have been or are beginning prescribed burning work because the

conditions are not conducive to fire. Declaration of Ralph O. Bloemers, Exhs. 1–5.  There is no

immediate, significant fire risk, and there is no dire need to immediately log the larger material

that the Rim Fire did not consume. Plaintiffs have demonstrated harm and the equities favor

plaintiffs. Plaintiffs request that the court issue tailored preliminary relief, and order the parties to

brief this case on the merits in an expedited fashion.  This case can be briefed and heard in a

reasonable amount of time.

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 9

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

## II.   Additional Facts/Background

### A.   Plaintiff John Muir Project diligently pursued resolution in good faith.

Despite defendants' attempt to paint a picture of delay, Dr. Chad Hanson of the John Muir Project has diligently attempted to resolve his organization's concerns with the proposed project by engaging in good faith with the agencies.  He was unwilling to engage with an attorney for the agency while he was attempting to organize a site visit with agency staff to see the extensive conifer regeneration in the project area, and particularly while he was unrepresented by counsel.[1] Second Decl. Chad Hanson, ¶ 6. He did not believe Mr. Rosen was acting in good faith with his assertion that he would investigate the new information, as the defendants ultimately only visited one of the units slated for logging. *Id.* ¶ 5. Mr. Rosen has a known pattern and practice of baiting members of the public, who may or may not be represented, with letters like Dr. Hanson received from him. Second Declaration of Dr. Chad Hanson (Second Hanson Decl.), ¶ 5.*Id.* The letters appear to be an attempt to get Dr. Hanson and others like him to divulge information to the agency. Dr. Hanson runs a program for a small non-profit charitable organization and has many competing demands. He was understandably unwilling to engage with a government lawyer who is far removed from the actual activities occurring on the ground and has a reputation for not engaging in good faith. Instead, Mr. Hanson chose to engage with the agencies directly and attempted to get them to visit the areas with extensive conifer regeneration. Second Hanson Decl., ¶ 6.  He worked to secure counsel, and moved with all due haste.  *Id.* at ¶ 7. He had no interest in delaying. *Id.* He sent another letter in

---

[1] Although Mr. Rosen was aware that Dr. Hanson had prior counsel in previous litigation, he failed to copy that prior counsel on the letter, instead sending it directly to Dr. Hanson.

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 10

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1
2     early August 2019, contemporaneously with when he discovered that logging had begun. *Id.* at ¶
3     6. *See* Dkt. # 28–10.
4           With respect to the filing of the Temporary Restraining Order, plaintiffs' counsel
5     substantially complied with local rule by providing a copy of the motion and memorandum in
6     support to the office of counsel for HCD within 24 hours of filing the motion. *See* Second Decl.
7     Meriel Darzen (Dkt # 43) for additional details. Defendant HCD has appeared and timely filed its
8     response to the motion. (Dkt. # 36).

9          **B.    Plaintiffs continued monitoring efforts show that live trees are being cut
10                 down in the project area contrary to defendants' representations.**

11          Plaintiffs' members and supporters regularly visit the areas in the Stanislaus National
12    Forest that are recovering naturally after the Rim Fire. Plaintiffs discovered that logging was
13    occurring when they visited the site on August 15, 2019.  At that time, they decided to send one
14    final letter to HUD and HCD requesting that logging be halted for the 3,000 acres where they
15    had demonstrated that natural regeneration is occurring at levels much higher than anticipated.
16    Plaintiffs have sent defendants data from 90 unlogged plots spanning the 3,000-acre area set for
17    cutting using the Disaster Relief Funds. In these plots, plaintiffs demonstrated regeneration in
18    them over 90% of them at a 20-meter radius plot size. Declaration of Tonja Chi (Chi Decl.), ¶¶
19    16–18, (Dkt. # 19).
20
21          Since their visit in August, plaintiffs have visited the area and further documented the
22    existing regeneration and the impacts from the logging activity. On September 28, 29 and 30,
23    2019, Tonja Chi and Maya Khosla visited the project area. Second Declaration of Tonja Chi
24    (Second Chi Decl.), ¶ 4, Ex. A & B thereto (Dkt # 39, 39-1, 39-2); Second Khosla Decl. (Dkt.
25    #41). Ms. Chi and Ms. Khosla observed multiple units in which green live trees (regeneration)
26
27
28

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 11

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1  had been cut and were piled to be burned. Second Chi Decl. ¶ 11. Several of the green trees were

2  of substantial size and several inches in diameter. Second Chi Decl., Ex A.

3  **III.     Argument**

4         **A.     Plaintiffs are Likely to Succeed on the Merits**

5              **1.     Plaintiffs have standing to challenge HUD's actions pursuant to the
6                     Disaster Relief Act.**

7         The zone of interests test is not intended to impose an onerous burden on the plaintiff and

8  "is not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

9  Here, plaintiffs have an interest in whether disaster relief funding aimed at helping communities

10 recover after wildfire is being diverted to unnecessarily log and degrade forested areas that

11 plaintiffs use and enjoy, only to then replant them using those same federal funds. *See* Disaster

12 Relief Appropriations Act of 2013, P.L. 113-2, 127 Stat. 4, 15 (2013) (describing need to avoid

13 waste, fraud and abuse of funds allocated for HUD's Community Development Fund).

14

15            **2.     Defendants have not established that the FHWP logging project is an
16                    eligible activity under 42 U.S.C. § 5305(a)(2).**

17        Defendants claim that the logging activities are eligible for disaster relief funding because

18 they fall under 42 U.S.C. § 5305(a)(2). That section lists as eligible:

19

20        "[T]he acquisition, construction, reconstruction, or installation (including design features
         and improvements with respect to such construction, reconstruction, or installation that
21        promote energy efficiency) of public works, facilities (except for buildings for the
         general conduct of government), and site or other improvements."

22 That section is further expanded upon in HUD's regulations. For example, 24 C.F.R. §

23 570.201(c) allows as eligible activities:

24

25        "Public facilities and improvements. Acquisition, construction, reconstruction,
         rehabilitation or installation of public facilities and improvements, except as provided in
26        § 570.207(a), carried out by the recipient or other public or private nonprofit entities."

27

28

Defendants make no attempt to explain how cutting down live trees and vegetation and then replanting is eligible. Public lands and timber are not infrastructure,[2] nor are they facilities.[3] *See e.g.*, *City of Hartford v. Glastonbury*, 561 F.2d 1032, 1056 (2nd Cir. 1976) ("street lights, playgrounds, and senior citizen centers" are developments eligible for CDBG funds). Facilities eligible for rehabilitation are listed in 24 C.F.R § 570.202 and all those listed are buildings. Defendants fail to justify logging and artificial planting as eligible for public disaster relief funds. Accountability and transparency are critical in the context of tens of millions of federal dollars granted to local governments (in this case to have those dollars passed back to the federal government), particularly where the impacts of natural disasters are real and oftentimes have severely impacted people's lives. $28 million can presumably assist with substantial reconstruction and planning activities in communities affected by wildfires; the current use of these funds is improper and must be halted so the funds may be applied to eligible activities.

> **3.    The biomass power plant and the FWHP logging project are connected and interdependent actions for the purposes of NEPA and HUD environmental review.**

Federal defendants and HCD each seem to make a half-hearted, unsupported attempt to justify why, despite crystal clear, binding regulations to the contrary, they failed to either analyze the two proposed projects together and analyze the cumulative impacts of the two proposed

---

[2] Webster's New (Third) International Dictionary defines "infrastructure" as "the system of public works of a country state or region: the resources (personnel, buildings or equipment) required for an activity." Defendants do not even attempt to describe public lands and timber as "infrastructure" in their grant application. Dkt. #28-1, p. 13 (describing roadway, culvert and rangeland damage as infrastructure damage, but not timber loss).

[3] Webster's New (Third) International Dictionary defines "facility" as "something (as a hospital) that is built, installed, or established to serve a particular purpose."

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 13

Crag Law Center
*3141 E Burnside Street
Portland, Oregon 97214
Tel. 503-525-2725*

1  activities in a supplemental EIS. Cumulative actions, which are actions that, when viewed with

2  other proposed actions, have cumulatively significant impacts, should be discussed in the same

3  impact statement. 40 C.F.R. § 1508.25. Projects that are located in the same geographic area and

4  are presented as part of one larger action, and have overlapping impacts must be analyzed

5  together. *See Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1215 (9th Cir.

6  1998)(stating the Forest Service is required to analyze five distinct timber sales in a single NEPA

7  analysis where the five sales were located in the same watershed, were part of a single timber

8  salvage project, were announced simultaneously, and were reasonably foreseeable.); *Sierra Club*

9  *v. United States*, 23 F. Supp. 2d 1132, 1141 (N.D. Cal. 1998).

10      Here, HCD's proposal to HUD included both proposed actions together as part of one

11  integrated program. Dkt. 28-1; 28-2. Defendants have identified the biomass facility as

12  reasonably foreseeable. The actions were described in ways that demonstrated overlapping

13  impacts and geographies. The biomass facility will "utilize biomass material removed from the

14  impacted disaster area," and will "serve the Rim Fire recovery area, and act as a regional facility

15  to accept thinned biomass from Tuolumne and surrounding counties." Dkt 28-1, p. 4-5. The

16  FWHP logging project involves biomass removal and burning in the Rim fire burn area. *Id.*

17  Thus, because both of these projects involve biomass logging and burning, which has

18  environmental impacts including loss of habitat and air quality impacts, in the same geographic

19  area, the cumulative impacts of these two actions must be analyzed in the same EIS.

20  Defendants' failure to do so was a failure to act, arbitrary and capricious and/or not in

21  accordance with law.

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 14

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1
2

**4.     Plaintiffs have demonstrated that there are significant changed circumstances in the project area and that the project treatments are not the same as analyzed in the EISs.**

3
4

There are three reasons, in addition to the lack of analysis of the biomass plant discussed

5
6

above, why defendants violated NEPA and the HUD regulations by failing to update and

supplement their environmental analysis for the FWHP logging project.

7

First, the increased amount of regeneration in the project area is significant new

8

information because it goes to the central purpose of the project and its presence obviates the

9

need to waste limited disaster relief funds for reforestation that nature has accomplished since the

10
11

fire, freeing up those dollars to be directed to another disaster relief project. Chi Decl., ¶¶ 16–18

(Dkt. 19); Second Chi Decl., ¶ 8.

12
13

Second, the decision to cut all trees, including live trees (which is occurring throughout

14

the project treatment units despite defendants' unsupported representations to the contrary) for

15

biomass and onsite burning rather than lumber is significant because the real-time carbon costs

16

of logging for biomass and onsite burning are appreciably different than those of logging for

17
18

lumber, and are far greater than natural recovery. Declaration of Pushker Kharecha (Kharecha

19

Decl.) ¶¶ 5–8. Defendants did not analyze the change in emissions resulting from the burning of

20

large snags, which is what is occurring and will occur under defendants' current actions.[4]

21

Defendants also did not analyze the impacts of removing all of the live tree regeneration because

22
23

they incorrectly assumed it would not be there. Plaintiffs returned to the project site this past

24

weekend and documented the cutting, piling, and crushing of live trees, in addition to those

25

------

[4] The 2014 EIS that HCD adopted includes an analysis of carbon impacts from biomass but

26

this analysis assumes that only dead trees up to 16 inches in diameter would be burned for

27

biomass. See EIS at 71 (Dkt. # 28-8, p. 95).

28

No.: 3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 15

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

previously documented. Second Chi Decl., ¶ 4 (Dkt. # 39), Ex. A and B; Second Decl. Khosla (Dkt #41). Ms. Chi's photos and Ms. Khosla's videos demonstrate that live conifers have been and are being cut and piled for burning.

Further, the North et. al. study and the glyphosate information plaintiffs submitted to defendants are significant because, among other reasons, the North et. al. study recommends avoiding artificial reforestation within 200 meters (657 feet) of areas of live trees. The 2016 EIS and HCD's decision contain no prescriptions like this, instead assuming that effective regeneration will only occur very close to live trees (See Dkt. # 28-9 at p. 257–60), but North et al. 2019 directly contradicts this assertion. The North et al. paper makes recommendations that are significant because it, either combined with the regeneration data collected by plaintiffs, or by itself, substantially changes the calculus. Dkt. # 25-10 at 11. *Blue Mts. Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1213 (9th Cir. 1998) (failure to discuss and consider scientific report's recommendations lends weight to plaintiffs' claim that the Forest Service did not take the requisite "hard look" at the environmental consequences of post-fire logging instead of letting nature do the healing).

### B.    Plaintiffs Have Demonstrated Irreparable Harm.

As to plaintiffs' real and immediate injury, defendants acknowledge that plaintiffs use the project area but argue that: "the FWHP only treats a very small portion of the Rim Fire area, and Plaintiffs may pursue their interests in the many thousands of acres that are not being treated." Dkt. # 35 at 23.  Defendants contend that: "to the extent that Plaintiffs base their claim of irreparable harm on potential harm to the forest or the wildlife within the forest, such a claim lacks merit, as a plaintiffs' claim of irreparable harm must rely on a demonstration of harm to the plaintiff or its members, not the environment." Dkt. # 35 at 22.  Plaintiffs have plainly shown actual harm to their use and enjoyment of these specific areas. Dkt. # 18-22.  The 9th Circuit

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 16

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

squarely rejected the exact same argument defendants make here in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). In *Alliance*, the Forest Service argued that "members can "view, experience, and utilize" other areas of the forest, including other fire-damaged areas that are not part of the Project." *Alliance for the Wild Rockies*, 632 F. 3d at 1135. The Court held that "this argument proves too much. Its logical extension is that a plaintiff can never suffer irreparable injury resulting from environmental harm in a forest area as long as there are other areas of the forest that are not harmed." *Id.* Plaintiffs have provided extensive documentation showing young emerging forests, wildlife thriving in these naturally recovering forests, and then the same forest after it has been logged. Dkt. # 19, Exh. 1; Second Chi Decl., Exh. A and B; Second Decl. Khosla (Dkt #4); Dkt. # 18, 20, 21, 22.

### 1. Post-Fire Logging Harms Soils and Hinders Forest Recovery.

The agency strains to paint a picture that it is helping to restore the land, when in fact it is adding stressors to this sensitive recovering landscape. High-severity fire kills trees and impacts the soils, making the forest sensitive to further disturbance. As discussed in Exhibit 3 to Dr. Kharecha's declaration "Relative to long-undisturbed forest (167 years old), sites subject to multiple fire, clearcut logging or salvage logging were characterized by soils with significantly lower values of a range of ecologically important measures at multiple depths, including available phosphorous and nitrate. Disturbance impacts in soils were most pronounced on sites subject to compounding perturbations, such as multiple fires and clearcut logging. *Long-lasting impacts on soil can have major ecological and functional implications.*" Dkt. 23-3 at 1. (Kharecha Decl. Exh. 3) (emphasis added). These impacts can be seen in the recent photos taken by plaintiffs. Second Chi Decl. Ex A and B (Dkt # 39-1, 39-2). The impacts of logging and machinery are "highly significant in both the short and mid-term (8 and 34 years), and result from the high-intensity combination of physical disturbance (clearing of forest with machinery)

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 17

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   and post-logging 'slash' burning (of remaining vegetation)." Dkt. 23-3 at 3. The impact of the

2   clearcutting and burning on the young forest and its soils is irreparably altering this forest and

3   these impacts will persist for a long-time.

4               **2.      Post-fire Logging Increases Greenhouse Gas Emissions and Fire Risk.**

5       The agency response after a fire matters both for soil health as well as for carbon

6   emissions, as underscored by the experts: "These disturbances [logging and slash pile burning]

7   can expose the forest floor, compact the soil, volatilize soil nutrients and redistribute organic

8   matter, resulting in the release of large amounts of $CO_2$ into the atmosphere." Dkt.# 23-3 at 3;

9   Dkt.# 23-8 ("post-fire salvage logging has numerous ecological ramifications. The removal of

10  burned trees that provide shade may hamper tree regeneration, especially on high-elevation or

11  dry sites (Perry et al. 1989). The loss of future soil organic matter is likely to translate into soils

12  that are less able to hold moisture (Jenny 1980), with implications for soil biota, plant growth

13  (Rose et al. 2001, Brown et al. 2003), and stream flow (Waring and Schlesinger 1985). Logging

14  and associated roads carry a high risk of spreading nonindigenous, weedy species (CWWR 1996,

15  Beschta et al. 2004).")

16      Defendants attempt to distract the court by claiming that its actions are reducing future

17  fire risk, even though it asserted in its factual section that the fire "effectively eliminated nearly

18  all vegetation." Defendants now claim that by cutting down the fire-killed trees and planting

19  new trees, the large tree trunks that survived the fire and the new seedlings that nature has

20  established for free, it is reducing the potential for a large fire in the future. Yet this assertion is

21  belied by the findings of its own scientists and numerous other papers that outline the basic

22  relationships between growth, decomposition, harvest and combustion—to which no forest is

23  exempt. Dkt. # 23-4 at 7.

No.: 3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 18

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

Defendants' assertion that these actions are reducing fire risk rests on the assumption that fire will visit this particular area before the forest grows back, and discounts the certain and far greater carbon emissions from piling and incinerating the larger materials which the fire did not burn. Dkt. # 23-4 at 7. ("Forest fires primarily consume leaves and small branches" and "more often, treatment would result in a reduction of C stocks over space and time. Claims that fuel-reduction treatments reduce overall forest C emissions are generally not supported by first principles, modeling simulations, or empirical observations.") Further, recent scientific study has compared burned and logged sites to sites that burn and are left to recover naturally. These studies have confirmed that *logged sites store about half of the total aboveground biomass as unlogged sites*. Dkt. # 23-9; Dkt. # 23-12 at 1, 7 ("For forests that suffered high fire mortality, unsalvaged (NS) stands will retain the most carbon onsite.")

The potential for burned sites to reburn more intensely, largely depends on whether the burned area is logged and replanted densely. Studies have repeatedly shown that salvage-logged and replanted areas burn *more severely than comparable stands left to naturally recover*.  Dkt. # 23-14 at 1. ("[F]uel conditions in conifer plantations can increase fire severity despite removal of large woody fuels.")

### 3.   Young Emerging Forests and Fire-Killed Trees Hold Significant Biological and Ecological Value.

Experts have advised that to achieve the lowest fire risk strategy and forest recovery: "leave the dead trees standing as long as possible (where they are less available for surface flames), allowing for aerial decay and slow, episodic input to surface fuel loads over decades." Dkt. # 23-5 at 1.  Experts have also advised, "[r]eplanting dense stands of fast-growing conifers—a common post-fire management practice – truncates the biologically rich early stages of ecological succession and can increase the severity of future fires." (Odion et al. 2004). Dkt. #

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 19

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

23-8 at 3; Dkt. # 23-11 ("[W]ildfires create dead wood (Angelstam 1996) and promote the development of cavities in trees (Inions et al. 1989)—structural attributes that are depleted by some forestry practices (Lindenmayer & Franklin 2002). The Forest Service's own expert stated that "California's 2013 Rim Fire re-burned many areas that had been planted at 300 + trees per acre…after the 1987 Stanislaus complex wildfire. Many of these young plantations supported rapid fire spread and high fire intensity, resulting in 100% mortality." Dkt. # 25-10 at 11.

Plaintiffs have submitted extensive photographic evidence from the actual units that have been logged or proposed for logging showing the use of these areas by wildlife. Dkt.# 18-1 at 1–5 (Showing Goshawk, gray fox, western bluebirds, pygmy nuthatch and young, black-backed woodpecker, great gray owl, calliope hummingbird using fire-killed trees).  Plaintiffs' experts have shown how the areas used by wildlife have been and are being impacted negatively and irreparably altered by logging. Dkt. # 18-1 at 8–11. The science tells us that "[i]n contrast to the natural recovery of a disturbed ecosystem, salvage harvesting has the potential to "convert a relatively intact system to a strongly modified site in which ecosystem control is reduced" (Cooper-Ellis et al. 1999:2693)." *Id.* The forests burned in the Rim Fire are currently being converted from naturally recovering young forests into highly disturbed and modified sites without habitat for wildlife.  Second Chi Decl. ¶¶ 9–12, Exh. A.

C.      **The Balance of the Harms Tips in Plaintiffs Favor.**

The defendants contend that plaintiffs delayed filing and that temporary relief will mean there is no way the project will ever be completed before the HUD grant expires in 2022. Dkt.# 35 at 24.  These claims are belied by the Defendants own actions. Defendants have logged nearly half of the units in less than 2 months, yet they claim there is no way it will be able to finish the project by 2022 if a temporary injunction is issued. Furthermore, even though Northern California is headed into a cooler, wet fall period and the fire consumed "nearly all the

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 20

Crag Law Center
*3141 E Burnside Street
Portland, Oregon 97214
Tel. 503-525-2725*

vegetation," defendants claim that it needs to immediately log naturally recovering young forests and burn them to decrease fire risk to communities that are miles away. Defendants' claims are hyperbolic, not supported by the facts on the ground and conflate the effect of temporary relief with permanent injunctive relief. *See Se. Alaska Conservation Council v. U.S. Forest Serv.,* No. 1:19-cv-00006-SLG, 2019 U.S. Dist. LEXIS 161639, at *20 (D. Alaska Sept. 23, 2019) (finding that a short-term preliminary injunction that would only prevent roughly one month of logging and associated activities during the 2019 season is in the public interest, and balance of equities favored plaintiffs). The balance of the harms supports an injunction tailored to prevent further harm while the parties expeditiously brief the merits of these claims based on the complete record.

## CONCLUSION

For the aforementioned reasons, plaintiffs respectfully request the court grant the temporary restraining order and preliminary injunction in this matter and deny defendants' motion to dismiss/transfer.

Respectfully submitted this 1st day of October 2019.

*/s/ Meriel Darzen*
Meriel Darzen, *Pro Hac Vice*
Ralph Bloemers, *Pro Hac Vice*
Crag Law Center
*Attorneys for Plaintiffs*

No.:  3:19-cv-05792-LB – COMBINED MEMORANDUM IN OPPOSITION
TO MOTION TO DIMISS/CHANGE VENUE AND IN SUPPORT OF MOTION
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 21

Crag Law Center
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*